**2015-cv-02617**

**IN THE**
**United States District Court**
**FOR THE EASTERN DISTRICT OF NEW YORK**

_____

SEBASTIAN BONGIOVANNI, JR., Estate Administrator,
*Appellant,*

v.

JANICE GRUBIN, Plan Trustee,
*Appellee.*

_____

*ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT*
*EASTERN DISTRICT OF NEW YORK in Case No.02-21821.*

**BRIEF OF APPELLEE**
**JANICE GRUBIN, PLAN TRUSTEE**

Dated: August 26, 2015      **LECLAIRRYAN,**
**A PROFESSIONAL CORPORATION**
Michael T. Conway, Esq.
Janice B. Grubin, Esq.
885 Third Avenue, Sixteenth Floor
New York, New York  10022
Tel:   (212) 697-6555
Fax:   (212) 986-3509

*Attorneys for Appellee*
*Janice Grubin, Plan Trustee*

13620002

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF THE ARGUMENT ............................................................................1

STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION .........................2

STANDARD OF REVIEW ...........................................................................................2

QUESTION PRESENTED ............................................................................................3

STATEMENT OF THE CASE .....................................................................................4

      A.      The Debtors' Bankruptcy Proceedings ...................................................4

      B.      Bongiovanni Jr. Litigation ......................................................................6

ARGUMENT ..............................................................................................................12

I.     THE APPEAL SHOULD BE DISMISSED BECAUSE APPELLANT FAILED TO FILE A BRIEF IN ACCORDANCE WITH THE BANKRUPTCY RULES ..................12

      A.      Appellant Failed To Timely File His Brief In Accordance With Bankruptcy Rule 8018(a)(1) ..........................................................................................13

      B.      Appellant Failed To File A Brief In Accordance With Bankruptcy Rule 8014 ....13

II.    THE BANKRUPTCY COURT PROPERLY DETERMINED THAT APPELLANT LACKED STANDING TO OBJECT TO THE FINAL REPORT AND SUPPLEMENT OR TO COMPEL THE TRUSTEE TO TURN OVER RECORDS OF DEBTORS ........14

      A.      Appellant Lacks Standing Because He Has No Interest In Debtors' Estates ........14

      B.      Appellant's Status As The Administrator Of Bongiovanni Sr.'s Estate Does Not Establish Appellant's Standing In These Bankruptcy Proceedings ......................15

III.   THE BANKRUPTCY COURT PROPERLY DETERMINED THAT APPELLANT HAD FAILED TO ESTABLISH ANY GROUNDS FOR RECONSIDERATION OF ITS PRIOR ORDERS ..................................................................................................18

      A.      Appellant Incorrectly Bases His Arguments On The Chapter 7 Handbook ..........19

      B.      The Plan Trustee Has Filed A Final Report ..........................................................21

i

      C.     The Plan Trustee Has Complied With All Of Her Post-Confirmation Obligations ........................................................................................................22

CONCLUSION ....................................................................................................................24

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. City of Bessemer*,
470 U.S. 564, 573 (1985).................................................................................3

*Asbestosis Claimants v. United States Lines Reorganization Trust*
(*In re United States Lines, Inc.*),
318 F.3d 432 (2d Cir. 2003)...........................................................................3

*Bongiovanni v. Grubin*,
No. 08 CV 3534, 2010 WL 3927042 (E.D.N.Y. Sept. 30, 2010).............................. *passim*

*Bongiovanni v. Grubin*,
451 Fed. App'x 53 (2d Cir. 2011)....................................................................8

*Caidor v. Onondaga County*,
517 F.3d 601 (2d Cir. 2008).........................................................................12

*Clarklift-West, Inc. v. Davis*,
No. 15-CV-2112, 2015 WL 4877422, at *3-4 (S.D.N.Y. Aug. 14, 2015)....................13

*Edwards v. INS*,
59 F.3d 5 (2d Cir. 1995)..............................................................................12

*H & C Dev. Grp., Inc. v. Miner* (*In re Miner*),
229 B.R. 561 (2d Cir. 1999) .........................................................................3

*In re Am. Express Merchants' Litig.*,
554 F.3d 300 (2d Cir. 2009)..........................................................................3

*In re Carbone*,
101 A.D.3d 866 (3d Dep't 2012) ...................................................................17

*In re Copperfield Invs., LLC*,
421 B.R. 604 (Bankr. E.D.N.Y. 2010)............................................................14

*In re Hunter*,
4 N.Y.3d 260 (2005) .................................................................................17

*In re Lehman Bros. Holdings, Inc.*,
415 B.R. 77 (S.D.N.Y. 2009).........................................................................3

*In re Sudano, Inc.*,
391 B.R. 678 (Bankr. E.D.N.Y. 2008)..........................................................7, 15

*Louis v. Bezio*,
    No. 11-CV-1409, 2015 WL 4872542 (E.D.N.Y. Aug. 12, 2015) .................................. 18

*McNeil v. United States*,
    508 U.S. 106 (1993).............................................................................................................12

*Mendell v. Gollust*,
    909 F.2d 724 (2d Cir. 1990), *aff'd*, 501 U.S. 115 (1991) ................................................18

*Scherer v. City of New York*,
    No. 03 Civ. 8445, 2007 WL 2710100 (S.D.N.Y. Sept. 7, 2007)......................................18

*Shrader v. CSX Trans., Inc.*,
    70 F.3d 255 (2d Cir. 1995)...............................................................................................18

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................................................14

*Zervos v. Verizon New York, Inc.*,
    252 F.3d 163 (2d Cir. 2001)...............................................................................................2

**FEDERAL CODES, Statutes, RULES, and other**

11 U.S.C. § 1104....................................................................................................................20, 22

28 U.S.C. § 158(a)(1).....................................................................................................................2

Fed R. Bankr. P. 8014.........................................................................................................12, 13, 14

Fed R. Bankr. P. 8018(a)(1)......................................................................................................12, 13

Fed. R. Civ. P.  60(b) ..........................................................................................................*passim*

E.D.N.Y. Local Rule 1073-1 .........................................................................................................9

N.Y. S.C.P.A. § 2205....................................................................................................................16

N.Y. S.C.P.A. § 2205(1)...........................................................................................................16, 17

Chapter 7 Handbook .......................................................................................................19, 20, 21, 22

Chapter 11 Handbook ..........................................................................................................19, 20, 22

Appellee, Janice B. Grubin (the "Plan Trustee"), the Plan Trustee in the confirmed chapter 11 cases of Sudano, Inc. ("Sudano"), Sortino Realty Corp. ("Sortino"), and Couva Associates, Ltd. ("Couva," and together with Sudano and Sortino, the "Debtors"), by her attorneys, LeClairRyan, A Professional Corporation, respectfully submits this brief in opposition to the appeal (the "Appeal") of appellant, Sebastian Bongiovanni, Jr. ("Appellant" or "Bongiovanni Jr.") from the Order of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") dated April 20, 2015 (the "Order") [Docket No. 490] [1] denying Appellant's Motion for an Order Compelling the Trustee to File a Final Account and Directing the Trustee to Turn Over Certain Bank Statements dated January 29, 2015 (the "Motion") [Docket No. 480].

## SUMMARY OF THE ARGUMENT

In the Order, the Bankruptcy Court properly denied the Motion, determining that Appellant lacked standing to seek the relief requested in the Motion and that Appellant's motion was another attempt to seek reconsideration of prior Orders of the Bankruptcy Court without identifying any basis for such reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure.  This Appeal is Appellant's fourth appeal and persists in his incessant personal attacks against the Plan Trustee.  As discussed below, this Appeal is devoid of any legal or factual basis and the Order should be affirmed.

First, the Bankruptcy Court properly denied the Motion based upon Appellant's lack of standing.  Appellant's standing has been rejected in his individual capacity and in his capacity as the Administrator of the estate of Sebastian Bongiovanni, Sr. ("Bongiovanni Sr."), Debtors' former sole shareholder.  Appellant has no standing individually in this case because he is not a

---

[1]      References to "Docket No." are references to the Bankruptcy Court's docket.

creditor, equity holder, and did not file a proof of claim; he is nothing more than a relative of a former shareholder of Debtors and, at best, an administrator of that former shareholder's estate. Upon confirmation of the Trustee's Joint Plan of Liquidation dated July 7, 2005 (the "Plan"), all of the shares in Debtors were extinguished.  Thus, given that Bongiovanni Sr. lacked any interest in Debtors upon the extinguishment of his shares in Debtors in August 2009, when the Plan went effective, his estate lacks any interest in Debtors, precluding Appellant from establishing standing.

Second, The Bankruptcy Court properly denied the Motion, reasoning that Appellant failed to establish any ground for reconsideration of its prior Orders under Rule 60(b).  As discussed below, Appellant's arguments have no relation to any of the grounds for reconsideration under Rule 60(b).  Instead, they relate to inapplicable law, are belied by the record, and are wholly inadequate to seek reconsideration of the Bankruptcy Court's prior Orders.

Given the sound reasoning of the Bankruptcy Court, the Order should be affirmed.

## STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1); the appeal is taken from the final Order of the Honorable Carla E. Craig of the Bankruptcy Court.

## STANDARD OF REVIEW

The "factual findings of a bankruptcy court must be upheld unless clearly erroneous." *Bongiovanni v. Grubin*, No. 08 CV 3534, 2010 WL 3927042, at *2 (E.D.N.Y. Sept. 30, 2010).  It is well-established that district courts "may find a bankruptcy court determination to be clearly erroneous" only if "when, on consideration of the record as a whole, the court 'is left with definite and firm conviction that a mistake has been committed."  *Id.* (quoting *Zervos v. Verizon*

*New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).   Further, although a bankruptcy court's "findings of fact are not conclusive on appeal, 'the party that seeks to overturn them bears a heavy burden.'"   *Bongiovanni*, 2010 WL 3927042, at *2 (quoting *H & C Dev. Grp., Inc. v. Miner* (*In re Miner*), 229 B.R. 561, 565 (2d Cir. 1999)).   Where two permissible views of the evidence exist, the bankruptcy court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

In contrast, on appeal, a bankruptcy court's legal conclusions are subject to *de novo* review.   *Asbestosis Claimants v. United States Lines Reorganization Trust* (*In re United States Lines, Inc.*), 318 F.3d 432, 435 (2d Cir. 2003).   Mixed questions of law and fact are reviewed "'either de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual.'"   *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *In re Am. Express Merchants' Litig.*, 554 F.3d 300, 316 n.11 (2d Cir. 2009)).

## QUESTION PRESENTED

Whether the Bankruptcy Court properly denied Appellant's motion seeking entry of an order compelling the Plan Trustee to file a final account and directing the Plan Trustee to turn over certain bank statements on the grounds that Appellant lacked standing and that Appellant established no grounds for reconsideration under any subsection of Rule 60(b) to the extent that he sought reconsideration of prior Orders.

## STATEMENT OF THE CASE

### A.      The Debtors' Bankruptcy Proceedings

The Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court in 2002.[2]

On January 30, 2004, GMAC Commercial Mortgage Corporation ("GMAC") filed a motion seeking the appointment of a chapter 11 trustee (the "Trustee Motion") due to, among other things, the Debtors' default under the Cash Collateral Stipulation dated June 3, 2003, bounced checks, the Debtors' transfer of GMAC's cash collateral and property of the estate to non-debtor related entities controlled by Bongiovanni Sr. without Court approval, and the Debtors' failure to timely file their monthly operating reports [Docket No. 72].  The Debtors, through counsel, opposed the Trustee Motion.  On February 12, 2004, the Court held a hearing on the Trustee Motion [Docket No. 75].  On March 3, 2004, the Bankruptcy Court entered an Order granting the Trustee Motion, directing the appointment of a Chapter 11 trustee [Docket No. 78].

On March 8, 2004, Ms. Grubin was appointed as the Trustee [Docket No. 80].

Among other things, after her appointment, the Plan Trustee stabilized the Debtors' operations and renovated and improved three apartment buildings owned by the Debtors (the "Properties") to correct serious health and safety issues that primarily resulted from years of neglect to the maintenance of the Properties. *Bongiovanni v. Grubin*, No. 08 CV 3534, 2010 WL 3927042, at *1 (E.D.N.Y. Sept. 30, 2010).

---

[2]      Sudano's case, Case No. 02-21821-jf, was filed on September 18, 2002.  Sortino's case, Case No. 02-22350-jf, was filed on September 30, 2002.  Couva's case, Case No. 02-22714-jf, was filed on October 8, 2002.  The three (3) cases were substantively consolidated under the Plan.

After selling the Properties, confirming the a liquidating Plan[3] that provided 100 cents on the dollar to holders of allowed general unsecured claims and completing the claims distribution and resolution process and the administration of the Debtors' bankruptcy estates, on November 27, 2007, the Plan Trustee filed a final report accounting for her administration of the Debtors' bankruptcy estates through and including November 26, 2007 (the "Final Report") [Docket No. 317], which report was approved by the United States Trustee.   Contemporaneously with the filing of the Final Report, the Plan Trustee filed her Motion for Approval of Final Report, Entry of Final Decree Closing Debtors' Chapter 11 Cases Pursuant to Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 and Granting Related Relief (the "Motion to Approve Final Report") [Docket No. 316].

On December 14, 2007 and December 17, 2007, Bongiovanni Jr. filed Objections to the Final Report purportedly on behalf of his family (the "Final Report Objections") [Docket Nos. 320, 321].

In the Final Report Objections, Bongiovanni Jr. sought to challenge, among other things, the November 29, 2005 Order approving the fees and expenses of all professionals retained in the Debtors' cases (the "Fee Order") [Docket Nos. 320, 321].   Additionally, Bongiovanni Jr. asserted that his mother, Mildred Bongiovanni ("Mrs. Bongiovanni"), was originally a 50% shareholder of Sortino and became the sole shareholder after Bongiovanni Sr. died on July 22, 2006.  *Id.*  As a result, Bongiovanni Jr. contended that Mrs. Bongiovanni was denied due process because the Trustee failed to serve her with any of the motions or notices filed in the Debtors' bankruptcy proceedings.  *Id.*

---

[3]      Ms. Grubin was named plan trustee under the Plan.

On January 28, 2008, the Plan Trustee filed a supplement to the Final Report to provide more detail concerning the matters addressed in the Final Report (the "Supplement to Final Report") [Docket No. 332], which was also approved by the United States Trustee.

### B.   Bongiovanni Jr. Litigation

On January 28, 2008, Bongiovanni Jr. filed a motion on behalf of Mrs. Bongiovanni, alleging that Mrs. Bongiovanni was a 50% shareholder of Sortino and that the Sudano and Couva shares were part of her marital assets, and seeking damages against the Trustee (the "Damages Motion") [Docket No. 336].   Specifically, in the Damages Motion, Bongiovanni Jr. rehashed arguments that he made in the Final Report Objections, contending that Mrs. Bongiovanni was deprived of due process because the Plan Trustee failed to provide her with any notice in the Debtors' bankruptcy proceedings.   *Id.*   Bongiovanni Jr. also alleged that the Properties should have been sold on an expedited basis, which would have saved millions of dollars in repairs and improvements, and allowed for an equitable distribution to the shareholders.   *Bongiovanni*, 2010 WL 3927042, at *1.

After the Bankruptcy Court held a conference with the Plan Trustee, Bongiovanni Jr., and the United States Trustee, the parties resolved the Final Report Objections filed by Bongiovanni Jr. and issues related to the Damages Motion.   The conference resulted in an Agreed Order dated February 4, 2008 by and among Bongiovanni Jr. (on behalf of Mrs. Bongiovanni), the Plan Trustee, and the United States Trustee that the Bankruptcy Court approved on February 7, 2008 (the "Order Approving Final Report") [Docket No. 340].   Pursuant to the Order Approving Final Report, (i) the Trustee's Final Report, as supplemented, was approved, (ii) Bongiovanni Jr. withdrew the Final Report Objections, (iii) the parties agreed that Mrs. Bongiovanni could

proceed with the Damages Motion, and (iv) none of the Debtors' monies would be disbursed until after adjudication of the Damages Motion.  *Id.*

On March 6, 2008, the Bankruptcy Court held a hearing on the Damages Motion.  On July 30, 2008, the Court issued its Decision denying the Damages Motion (the "Decision Denying Damages Motion") [Docket No. 369].  In the Decision Denying Damages Motion, the Bankruptcy Court held that (i) neither Mrs. Bongiovanni nor Bongiovanni Jr. had standing to bring the Damages Motion, (ii) Mrs. Bongiovanni had not been deprived of due process by the Plan Trustee, (iii) the Plan Trustee had not breached any fiduciary duty and, rather, had "exercised sound business judgment in her handling of the Properties and fulfilled her fiduciary duty to maximize the value of estate assets," and (iv) Bongiovanni Jr. had not proven any damages nor were damages warranted given that the Damages Motion was "little more than an attempt to unravel these Chapter 11 cases by means of an impermissible collateral attack on final orders of th[e] Court authorizing the sale of the Properties, confirming the Plan and awarding compensation to the Trustee and her counsel."  *In re Sudano, Inc.*, 391 B.R. 678, 686-91 (Bankr. E.D.N.Y. 2008).

Also on July 30, 2008, the Bankruptcy Court entered an Order denying the Damages Motion (the "Order Denying Damages Motion") [Docket No. 370].  Among other things, in the Order Denying Damages Motion, the Court ordered that (i) the Damages Motion was denied in its entirety and (ii) the Trustee was "authorized to disburse the remaining funds of these estates in accordance with the Final Report."  The Order Denying Damages Motion completed the adjudication of the Damages Motion.  *Id.*

On August 8, 2008, Bongiovanni Jr. filed a motion for reconsideration of the Order Denying Damages Motion (the "First Motion for Reconsideration") [Docket No. 372].

7

On August 21, 2008, the Bankruptcy Court held a hearing on the First Motion for Reconsideration.  On August 26, 2008, the Bankruptcy Court entered an Order denying the First Motion for Reconsideration (the "Order Denying Reconsideration") [Docket No. 387].

On August 25, 2008, Bongiovanni Jr. filed a notice of appeal of the Order Denying Damages Motion to this Court  [Docket No. 384].

On September 30, 2010, this Court issued an Order affirming the Order Denying Damages Motion and the Order Denying Reconsideration (the "First District Court Order"). *Bongiovanni*, 2010 WL 3927042, at *1.  This Court first concluded that Mrs. Bongiovanni had standing because she was the party aggrieved by the purported due process violation.  *Id.* at *3. Nevertheless, this Court affirmed the Order Denying Damages Motion and the Order Denying Reconsideration because the Trustee did not deprive Mrs. Bongiovanni of due process, Mrs. Bongiovanni had not proved any damages, and Mrs. Bongiovanni's damages claims were founded on speculation.  *Id.* at *3.  Although this Court ruled that Mrs. Bongiovanni had standing to assert a deprivation of due process claim, this Court rejected the notion that Mrs. Bongiovanni had standing "to bring belated attacks on the decisions of the bankruptcy court after her interests were extinguished."  *Id.* at *3.

Mrs. Bongiovanni appealed the First District Court Order, *pro se*, to the Second Circuit Court of Appeals (the "Second Circuit").  On December 20, 2011, the Second Circuit entered an Order affirming the 2010 District Court Order (the "Second Circuit Order").  *Bongiovanni ex rel. Bongiovanni v. Grubin*, 451 Fed. App'x 53 (2d Cir. 2011).  Therein, the Second Circuit rejected Mrs. Bongiovanni's argument that the notice procedure in the bankruptcy court deprived her of due process.  *Id.* at 54.  Further, the Second Circuit held that the Trustee gave adequate notice of the proceedings to all known parties and that the sale of the Properties was widely advertised,

8

giving sufficient notice under the circumstances to all known parties.  *Id.*  The United States Supreme Court denied certiorari on October 2, 2012.

On October 25, 2012, Bongiovanni Jr., again on behalf of Mrs. Bongiovanni, filed a motion seeking (i) to have Mrs. Bongiovanni's "Motion to Renew" dated October 23, 2012 (which was annexed thereto as Exhibit 1) docketed and (ii) reassignment of the "Motion to Renew" (the "Motion to Docket and Reassign") [Docket No. 412].

On November 7, 2012, the Bankruptcy Court entered an Order Denying Reassignment to the extent that it sought reassignment under Rule 1073-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York [Docket No. 413].  In addition, the Court issued an Order Denying Renewal on November 8, 2012 (the "Order Denying Renewal") [Docket No. 415].

On November 21, 2012, Bongiovanni Jr. filed a notice of appeal of the Order Denying Renewal [Docket No. 423].  This Court docketed the appeal under case number 12-cv-06387-CBA (the "Second Appeal").  On September 27, 2013, this Court entered a memorandum and order affirming the Order Denying Reassignment and the Order Denying Renewal [Second Appeal Docket No. 46].

By petition dated March 12, 2013 (the "Petition"), Bongiovanni Jr. sought a decree awarding Letters of Administration to himself over Bongiovanni Sr.'s estate in the Matter of the Estate of Sebastiano Bongiovanni a/k/a Sebastian Bongiovanni, Sr., Deceased, File No. 2013-1017, pending in the New York Surrogate's Court, Kings County (the "Surrogate's Court").[4]  In support of the Petition, Bongiovanni Jr. filed an Affidavit of Delay sworn to on March 12, 2013 (the "Affidavit of Delay") and an Affidavit of Urgency sworn to on March 21, 2013 (the "Affidavit of Urgency").

---

[4]     On July 22, 2006, Bongiovanni Sr. died.

In the Affidavit of Delay, Bongiovanni Jr. averred that "after careful review of the Trustee [sic] Final Report and Monthly Operating Reports [sic] monies are missing, unaccounted for, misused, and will move forward in both Civil and Bankruptcy Courts to request Clarification and Restitutions."

In the Affidavit of Delay, Bongiovanni Jr. averred that he was "due back in District Court on 3/27/13 in a discovery/motion hearing to determine if all the assets in the above Estate Have been expunged or if assets still exist or [sic] been disbursed correctly."

By Assignment of Intestate Share and All Claims dated March 17, 2013 and filed on March 21, 2013, Mrs. Bongiovanni purported to complete the following assignment:

> **ASSIGN** my distributive share of the Estate of the above-named decedent; and/or any and **All Claims** stemming from said Estate or all Claims against libelous professionals whom have, handled or managed the affairs of the Estate of the above named decedent including but not limited to any/all Claims against the Trustee Janice Grubin, the Professionals Trustee Grubin employed [including but not limited to any and all Accountants, Lawyers, Management Firms] and the Office of the U.S. Trustee; and any/all claims against any/all libelous' [sic] professionals that may or may not have come directly or indirectly in contact of the Estate of the above named decedent, as such intestate distribute to my son, <u>Sebastian Bongiovanni Jr.</u>

On March 25, 2013, the Surrogate's Court entered a Decree Appointing Administrator, pursuant to which the Surrogate's Court granted the Petition and issued Letters of Administration to Bongiovanni Jr.

The Motion that generated the Order which is the subject of this fourth appeal is the third motion Bongiovanni Jr. filed in the Bankruptcy Court in his purported role as the Administrator of his father's estate.

On August 13, 2013, Bongiovanni Jr. filed a motion seeking (i) to compel the Plan Trustee to file a final account as a supplement to the Final Report and (ii) to sanction the Plan

Trustee for alleged fraudulent misrepresentations and breach of fiduciary duty (the "First Administrator Motion") [Docket No. 437].

On October 22, 2013, the Bankruptcy Court entered an Order denying the Motion to Compel and Sanction (the "Order Denying First Administrator Motion") [Docket No. 445]. Thereafter, the Bankruptcy Court denied Bongiovanni Jr.'s motion for reconsideration by Order entered on January 15, 2014 (the "2014 Order Denying Reconsideration") [Docket No. 449].

On February 7, 2014, Bongiovanni Jr. filed a notice of appeal of the 2014 Order Denying Reconsideration [Docket No. 453].  Bongiovanni Jr.'s appeal was docketed under case number 14-cv-01981-CBA (the "Third Appeal").  Bongiovanni Jr.'s and his appeal was dismissed on May 23, 2014 by this Court [Third Appeal Docket No. 14].

By motion dated June 18, 2014 (the "Second Administrator Motion"), Bongiovanni Jr. sought (i) sanctions against the Plan Trustee for making unauthorized post-confirmation disbursements, (ii) compelling the Plan Trustee to file a final account or additional supplement to the Final Report, and (iii) requesting a conference on the filing of a final account [Docket No. 465].

By Order entered August 13, 2014, the Bankruptcy Court denied the Second Administrator Motion (the "Order Denying Second Administrator Motion") [Docket No. 477], finding that the challenged disbursements were authorized by the Fee Order, the Final Report and the Plan and that the continued litigation in the cases rendered premature the request to compel the Plan Trustee to file a final account or to schedule a conference on the matter.  The Court also ordered that no grounds for reconsideration had been shown and that any sanctions against the Plan Trustee and the retained professionals for breach of fiduciary duty were barred

by res judicata because the conduct giving rise to those claims were the subject of prior orders in the cases.  *Id.*

## ARGUMENT

### I.    THE APPEAL SHOULD BE DISMISSED BECAUSE APPELLANT FAILED TO FILE A BRIEF IN ACCORDANCE WITH THE BANKRUPTCY RULES

As a threshold matter, this Court should dismiss this appeal because Appellant has failed to timely file a brief and to file a brief that complies with the requirements of Bankruptcy Rule 8014.  Although the Trustee is mindful that Appellant is proceeding *pro se* in this appeal, Appellant's *pro se* status does not excuse Appellant from complying with the applicable Bankruptcy Rules.   Indeed, the Second Circuit has unequivocally held that procedural requirements apply to *pro se* litigants and that *pro se* litigants are required to comply with all procedural rules.  *See*, *e.g.*, *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995); *Caidor v. Onondaga County*, 517 F.3d 601 (2d Cir. 2008) (dismissing an appeal for failure to timely plead and noting that if the *pro se* litigant had consulted the federal rules of civil procedure he would have been informed of the rule).   Even the Supreme Court has mandated that procedural rules in civil litigation should not be "interpreted so as to excuse mistakes by those who proceed without counsel."  *McNeil v. United States*, 508 U.S. 106 (1993).

As set forth below, Appellant's failure to both timely file a brief under Bankruptcy Rule 8018(a)(1) and observe the requirements of Bankruptcy Rule 8014 are fatal and require dismissal of this appeal.   Appellant's failure to comply with the requirements of the Bankruptcy Rules related to appeals is even more inexcusable given that this is the fourth appeal that he has filed in these bankruptcy proceedings.

### A.      Appellant Failed To Timely File His Brief In Accordance With Bankruptcy Rule 8018(a)(1)

Pursuant to Bankruptcy Rule 8018(a)(1), an "appellant must serve and file a brief within 30 days after the docketing of notice that the record has been transmitted or is available electronically." Fed. R. Bankr. P. 8018(a)(1).  On June 29, 2015, this Court docketed a notice that the record on appeal was transmitted and available electronically [District Court Docket No. 5].  Thus, Appellant was required to file and serve his brief on or before July 29, 2015.  In fact, Appellant filed his brief on July 30, 2015 [District Court Docket No. 6]. Given that Appellant failed to file his brief within 30 days of transmittal of the record on appeal, this Appeal should be dismissed.  *See Clarklift-West, Inc. v. Davis*, No. 15-CV-2112, 2015 WL 4877422, at *3-4 (S.D.N.Y. Aug. 14, 2015) (dismissing appeal where appellant failed to file in accordance with Bankruptcy Rule 8018(a)(1)).

### B.      Appellant Failed To File A Brief In Accordance With Bankruptcy Rule 8014

Pursuant to Bankruptcy Rule 8014, an appellant's brief must contain, among other things, "(2) a table of contents, with page references; (3) a table of authorities . . . ; (5) a statement of the issues presented and, for each one, a concise statement of the applicable standard of review; (6) a concise statement of the case . . . with appropriate references to the record; [and] (7) a summary of the argument." Fed. R. Bankr. P. 8014.  As discussed below, Appellant has failed to comply with the requirements of Bankruptcy Rule 8014.

As a threshold matter, Appellant's filing is not even a brief.  Rather, the main filing by Appellant is captioned as an affidavit.  Appellant's submission fails to include a table of contents, a table of authorities, a statement of the issues presented, and a summary of the argument.  Appellant's most egregious violation of Bankruptcy Rule 8014 is his failure to provide references to the record throughout his entire submission, and instead making up his own

version of the facts.  Given that this is Appellant's fourth appeal in these bankruptcy cases, his failure to comply with Bankruptcy Rule 8014 is inexcusable and this Appeal should be dismissed.

## II.    THE BANKRUPTCY COURT PROPERLY DETERMINED THAT APPELLANT LACKED STANDING TO OBJECT TO THE FINAL REPORT AND SUPPLEMENT OR TO COMPEL THE TRUSTEE TO TURN OVER RECORDS OF THE DEBTORS

The Bankruptcy Court properly determined that Appellant lacked standing to seek the relief requested in the Motion.  Consistent with this Court's prior rulings and its own prior rulings, the Bankruptcy Court properly rejected Appellant's latest unsubstantiated and abhorrent attack against the Trustee because he is nothing more than the relative of a former shareholder of Debtors and the purported Administrator of a decedent's estate that holds no interest in Debtors' estates.

### A.    Appellant Lacks Standing Because He Has No Interest In The Debtors' Estates

As a threshold matter, Appellant, individually, cannot satisfy the requirements to establish Article III standing.  When determining whether a party has standing, courts consider "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'"  *In re Copperfield Invs., LLC*, 421 B.R. 604, 610 (Bankr. E.D.N.Y. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "To establish Article III standing, a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is fairly traceable to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision."  *Copperfield Invs.*, 421 B.R. at 610 (quotation and citation omitted).

Appellant's inability to establish standing was succinctly and correctly summarized by the Bankruptcy Court in the Order Denying Damages Motion in 2008.   There, the Bankruptcy Court explained that Appellant lacked standing for the following reasons:

> [Appellant] is not listed in the Debtors' schedules as a creditor or equity security holder.  Nor has he filed a proof of claim in any of the Debtors' Chapter 11 cases. [Appellant] has never suggested that he is asserting his personal interest and bringing the motion in his own behalf.  The Motion was filed and prosecuted by [Appellant] on behalf of Mrs. Bongiovanni.  As such, [Appellant] lacks the capacity or status to obtain relief.

*In re Sudano, Inc.*, 391 B.R. at 686.  The Bankruptcy Court's finding that Appellant lacked the capacity or status to obtain the relief in connection with the Damages Motion in 2008 remains true with respect to the Motion seven years later.  Appellant is not a creditor, equity security holder, or other party-in-interest.  Appellant is simply a relative of a former shareholder of Debtors and has no standing in these chapter 11 cases.

**B.      Appellant's Status As The Administrator Of Bongiovanni Sr.'s Estate Does Not Establish Appellant's Standing In These Bankruptcy Proceedings**

In an attempt to circumvent his lack of individual standing, Appellant makes an argument founded on the mistaken belief that his status as the Administrator of the Bongiovanni Sr. estate grants him standing in these cases.  *See* Appellant's Brief at pp. 6-7.  Specifically, Appellant asserts that "[t]he Lower Court confuses Issue [sic] with the 'Final Account', [sic] TDR which has not been submitted to the Court and Appellant does have standing to request a full Account [sic] of the Debtors [sic] Estates [sic] as the Administrator of the same."  *Id.* at p. 6.  Appellant's argument, which is made by him for the fourth time in this latest submission, is without merit and has been summarily rejected by this Court and the Bankruptcy Court because Bongiovanni Sr.'s estate has no interest in these chapter 11 cases.

Under analogous circumstances, this Court held that Mrs. Bongiovanni lacked standing in these chapter 11 cases.  Specifically, this Court rejected the notion that Mrs. Bongiovanni would have standing "to bring belated attacks on the decisions of the bankruptcy court after her interests were extinguished," which is precisely what Appellant attempts to do in the Motion. *Bongiovanni*, 2010 WL 3927042, at *3.  This Court concluded that Mrs. Bongiovanni had no interest or standing in these chapter 11 cases because any shares that Mrs. Bongiovanni held in Debtors were cancelled upon confirmation of the Plan.  The same rationale applies here because Bongiovanni Sr.'s shares in Debtors were extinguished upon confirmation of the Plan, and Appellant, as Administrator, attempts to rely on the ownership of such shares as constituting property of Bongiovanni Sr.'s estate necessary to preserve.  Thus, the Bankruptcy Court correctly held that Appellant lacked standing to object to the Final Report and Supplement or to compel the Trustee to turn over records of Debtors.

In support of his argument that he has standing as the Administrator of Bongiovanni Sr.'s estate, Appellant relies on Section 2205 of New York's Surrogate's Court Procedure Act (the "SCPA").  Appellant's reliance on SCPA 2205 is misplaced because SCPA 2205 has no relevance in these bankruptcy proceedings.  *See* Appellant's Brief at p. 7.  Section 2205 of the SCPA provides as follows:

> In the manner provided in this section and in section 2206, the court may at any time, upon it appearing that it is for the best interest of the estate, make an order (a) requiring a fiduciary to file an intermediate or final account within such time and in such manner as directed by it, (b) suspending a fiduciary who being duly cited to account neglects to appear on the return of process without showing a satisfactory excuse therefore, or who fails to file an account within such time and in such manner as directed by the court, (c) appointing an eligible person to succeed a fiduciary whose letters have been suspended, (d) fixing a trial date for a hearing on the removal of a fiduciary whose letters have been suspended, (e) fixing a trial date to take and state an account on behalf of a fiduciary who fails to file such account or procure its settlement, and (f) granting such other and further relief as the court may direct.

16

N.Y. S.C.P.A. § 2205(1).

As the New York Court of Appeals has explained, Article 22 of the SCPA requires "fiduciaries such as executors and trustees . . . to account for their actions.  Executors ordinarily account at the conclusion of estate administration while trustees account when the trust is terminated or when they cease to serve."  *In re Hunter*, 4 N.Y.3d 260, 267 (2005) (quotation and citation omitted).  Thus, "[w]here the beneficiary of an estate has demanded an accounting, the party submitting the account has the burden of proving that he or she has fully accounted for all the assets of thee estate, and this evidentiary burden does not change in the event the account is contested."  *In re Carbone*, 101 A.D.3d 866, 868 (3d Dep't 2012) (quotation and citation omitted).

Appellant appears to confuse the role of a trustee in bankruptcy with the role of a fiduciary under the SCPA.  Although it is true that a fiduciary can be compelled to account for their actions under Section 2205 of the SCPA, that procedure is entirely unrelated to the Plan Trustee's obligations in these chapter 11 cases.  Even if Appellant could demonstrate that he is a beneficiary entitled to an accounting, the Plan Trustee is not the executor or trustee of Bongiovanni Sr.'s estate and cannot be compelled to file an accounting in a bankruptcy case based on that provision of the SCPA.  Moreover, as noted, Bongiovanni Sr.'s estate has no interest in Debtors because Bongiovanni Sr.'s shares in Debtors were extinguished upon confirmation of the Plan.  Thus, Section 2205 of the SCPA does not in any way remedy Appellant's inability to establish standing.  Accordingly, the Bankruptcy Court properly held that Appellant does not have standing to object to the Final Report and Supplement or to compel the Trustee to turn over records of the Debtors.

## III.   THE BANKRUPTCY COURT PROPERLY DETERMINED THAT APPELLANT HAD FAILED TO ESTABLISH ANY GROUNDS FOR RECONSIDERATION OF ITS PRIOR ORDERS

Rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules") provides that a court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Motions for reconsideration pursuant to Rule 60(b) are "addressed to the 'sound discretion of the district court and [ ] generally granted upon a showing of exceptional circumstances.'"  *Louis v. Bezio*, No. 11-CV-1409, 2015 WL 4872542, at *1 (E.D.N.Y. Aug. 12, 2015) (quoting *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd*, 501 U.S. 115 (1991)).   Indeed, the standard for granting motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, [sic] in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Trans., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Further "the evidence in support of the motion [for reconsideration] must be highly convincing."  *Louis*, 2015 WL 4872542, at *1 (citing *Scherer v. City of New York*, No. 03 Civ. 8445, 2007 WL 2710100, at *4 (S.D.N.Y. Sept. 7, 2007)).

As set forth below, the Bankruptcy Court correctly concluded that Appellant failed to demonstrate any ground for reconsideration of the Order Approving Final Report and various other Orders entered by the Bankruptcy Court.  In his submission, Appellant has merely rehashes the same unpersuasive arguments that he made to the Bankruptcy Court that amount to little more than personal attacks against the Trustee that are not supported by any reasonable view of the Bankruptcy Code.  None of Appellant's arguments satisfy the stringent standard applicable to motions for reconsideration by demonstrating any of the grounds for reconsideration set forth in Federal Rule 60(b).

### A.    Appellant Incorrectly Bases His Arguments On The Chapter 7 Handbook

A generous reading of Appellant's submission could lead one to conclude that he argues that the Bankruptcy Court erred by failing to reconsider its prior orders because it committed a mistake by refusing to consider the United States Trustee Handbook for bankruptcy trustees.  Appellant's Brief at pp. 8-9.  Unfortunately for Appellant, this argument is without merit because Appellant consistently and erroneously relies on the Handbook for Chapter 7 Trustees effective October 1, 2012 (the "Chapter 7 Handbook") rather than the Chapter 11 Trustee Handbook published in May 2004 (the "Chapter 11 Handbook") and thereby confuses the obligations of trustees in chapter 11 bankruptcy proceedings and chapter 7 bankruptcy proceedings.

Appellant's improper reliance on the Chapter 7 Handbook is demonstrated by his argument that the Plan Trustee failed to satisfy her obligation to file the "TDR" with the Court and provide the Office of the United States Trustee with "original bank statements."  Section 4(J) of the Chapter 7 Handbook demonstrates that Appellant improperly relies upon the Chapter 7 Handbook, providing the following advice to chapter 7 trustees:

19

> Section 704(9) requires a trustee **in a chapter 7 case** to make a final report (TFR) and file a final account (TDR) of the administration of the case. The trustee must be familiar with the following basic criteria and with any additional local court rules or policies that apply.

Chapter 7 Handbook, p. 4-31 (emphasis added). Indeed, Appellant further quotes (without signifying such) the Chapter 7 Handbook for the proposition that "[w]ithin 125 days after the entry of an order allowing final compensation and expenses, a trustee must submit to the United States Trustee for review a TDR signed under penalty of perjury certifying that the estate has been fully administered." Chapter 7 Handbook, p. 4-33; *see also* Appellant's Brief at p. 8.

Appellant misapprehends that there are different handbooks for chapter 7 trustees and chapter 11 trustees. The Chapter 11 Trustee Handbook was published in May 2004 and discusses the obligations of a chapter 11 trustee under the Bankruptcy Code. In contrast, the Chapter 7 Handbook advises chapter 7 trustees on relevant provisions of the Bankruptcy Code, including the obligations of a chapter 7 trustee under the Bankruptcy Code. Each handbook is strictly tailored to the role of the trustee in the applicable chapter 7 or chapter 11 case. For example, the statutory obligations of a chapter 7 trustee continue until the bankruptcy case is closed, while the statutory obligations of a chapter 11 trustee cease when the chapter 11 plan becomes effective. *Compare* Chapter 7 Handbook at pp. 4-32-4-32 to Chapter 11 Handbook at pp. 75-77. Moreover, the Chapter 11 Handbook advises chapter 11 trustees as follows:

> In addition, a chapter 11 trustee appointed or elected under § 1104 is required to file a final report and account of the administration of the estate with the court and the United States Trustee pursuant to § 704(9) (made applicable by 11 U.S.C. § 1106(a)(1)). The final report should provide a complete record of the trustee's administration including the receipt of, intervening transactions involving, and distribution or disposition of all estate property at the conclusion of the trustee's administration. Because the estate ceases to exist upon confirmation, a final report and account should be filed by the trustee as soon as confirmation has occurred.

Chapter 11 Handbook, p. 76.

Thus, to the extent that Appellant argues that the Bankruptcy Court made a mistake of law warranting reconsideration by failing to consider the Chapter 7 Handbook, Appellant's argument is without merit.  Appellant's continued improper reliance on the Chapter 7 Handbook further confirms that the Bankruptcy Court properly denied the Motion to the extent that it seeks reconsideration of various Orders that it had previously entered.

**B.      The Plan Trustee Has Filed A Final Report**

To the extent that Appellant contends that reconsideration was warranted because the Plan Trustee has failed to file a final report, Appellant's contention is belied by the record.  *See* Appellant's Brief at p. 9.  As set forth above, after selling the Properties, confirming the 100 cent liquidating Plan, and completing the distribution and claims resolution process and the administration of Debtors' bankruptcy estates, on November 27, 2007, the Plan Trustee filed the Final Report [Docket No. 317].  After Appellant filed the Final Report Objections [Docket Nos. 320. 321], the Plan Trustee filed the Supplement to Final Report on January 28, 2008 [Docket No. 332].

The absurdity of Appellant's suggestion that the Plan Trustee has failed to file a final report is highlighted by the fact that Appellant participated in a conference that resulted in an Order approving the Final Report as supplemented.  Indeed, as set forth above, the Bankruptcy Court's conference with the Plan Trustee, Appellant, and the United States Trustee resulted in the Order Approving Final Report.  [Docket No. 340].  Thus, the record demonstrates the absurdity and self-serving delusions of such argument and shows that he participated in the conference that resulted in the Order Approving Final Report.  Accordingly, the Bankruptcy Court properly denied the Motion to the extent that it sought reconsideration of the Order Approving Final Report.

**C.      The Plan Trustee Has Complied With All Of Her Post-Confirmation Obligations**

To the extent that Appellant suggests that the Bankruptcy Court erred due to the Plan Trustee's failure to file a final account and bank statements to the United States Trustee, such argument fails to establish any ground for reconsideration under Rule 60(b) and is again incorrect.  *See* Appellant's Brief at p. 9.

In making this argument, Appellant again erroneously relies on the Chapter 7 Handbook and again Appellant's argument is belied by the record.  The Chapter 11 Handbook provides that "[a]ll bank account information must be supplied to the United States Trustee."  Chapter 11 Handbook at p. 25.  Consistent with this obligation, upon her appointment and to date, the Plan Trustee has provided the United States Trustee with bank account information.

Additionally, the Plan Trustee has properly reported all transactions both before and after confirmation of the Plan.  The Chapter 11 Handbook provides as follows:

> One of the hallmarks of an unconfirmed chapter 11 case is financial disclosure of the debtor's operations.  If the business of the debtor is authorized to be operated, the trustee is required to file periodic reports with the court, the United States Trustee, and certain taxing authorities.  The reports must include summaries of the operation of the business, a statement of receipts and disbursements, and other information required by the United States Trustee or the court.  The form of the reports (known as Monthly Operating Reports) will vary somewhat by United States Trustee region, and the United States Trustee will provide the chapter 11 trustee with the proper forms.

> Pursuant to § 1106(a) (7), a chapter 11 trustee, whether appointed or elected under § 1104 or created by the provisions of a confirmed plan, is required to file such reports after confirmation as are necessary or as the court orders.  The primary function of the post-confirmation reports is to inform the United States Trustee, the court, and all parties in interest of the progress made in consummating the plan.

Chapter 11 Handbook, pp. 75-76.

22

Consistent with the Bankruptcy Code and the Chapter 11 Trustee Handbook, the Plan Trustee filed monthly operating reports and statements of post-confirmation disbursements identifying the transactions she engaged in and then submitted monthly bank statements to the United States Trustee – showing a non-operating entity – as she defended her trusteeship for more than seven (7) years against Appellant's baseless and unsuccessful litigation.

To the extent that Appellant contends that the Plan Trustee has improperly failed to file a final account, justifying reconsideration of prior orders, Appellant's own actions have rendered the filing of a final account premature.  Contrary to Appellant's contention, the Plan Trustee has complied with all of her obligations under the Bankruptcy Code, the Chapter 11 Handbook, and the Orders of the Bankruptcy Court, including the 2014 Order Denying Reconsideration.  In the 2014 Order Denying Reconsideration, the Bankruptcy Court expressly stated "that upon the full administration of this case and **resolution of all litigation**, the Trustee will file any final account or supplement to the Final Report, if and to the extent necessary, according to the guidelines set forth by the United States Trustee, as well as an application for a Final Decree."  2014 Order Denying Reconsideration at p. 6 (emphasis added).  Subsequently, Appellant filed an appeal, two additional motions, and this appeal.  Thus, the resolution of all litigation has not yet occurred, and the filing of a final account and supplemental final report would be premature and inefficient.  Accordingly, the Bankruptcy Court properly determined that Appellant failed to present any ground for reconsideration under Federal Rule 60(b) and properly denied the Motion.

## CONCLUSION

For the foregoing reasons, the Order should be affirmed.

Dated:  New York, New York                         **LECLAIRRYAN, A PROFESSIONAL**
       August 27, 2015                              **CORPORATION**


By:    /s/Janice B. Grubin
Michael T. Conway, Esq.
Janice B. Grubin, Esq.
885 Third Avenue, Sixteenth Floor
Tel.: (212) 697-6555
Fax: (212) 986-3509

*Counsel for Appellee Janice B. Grubin, Plan
Trustee*

24