FILED
U.S. IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 28 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SEBASTIAN G. BONGIOVANNI,

                 Appellant,

-against-

JANICE B. GRUBIN, Chapter 11 Trustee,

                 Appellee.
----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-2617 (CBA)

**AMON, United States District Judge:**

Appellant Sebastian G. Bongiovanni Jr. ("Bongiovanni Jr."), proceeding pro se, appeals the April 20, 2015, order of the United States Bankruptcy Court for the Eastern District of New York in In re Sudano, et al., No. 02-BK-21821, which denied Bongiovanni Jr.'s motion to compel the Chapter 11 Trustee Janice Grubin (the "Trustee") to file a final account of the administration of the estate at issue and for an order directing the Trustee to turn over bank statements. Because Bongiovanni Jr. does not have standing, the Court dismisses the appeal for lack of jurisdiction.

## BACKGROUND

This action is the fourth appeal of an order by the Bankruptcy Court taken in this case. This Court twice affirmed the Bankruptcy Court, see Bongiovanni v. Grubin, No. 08-CV-3534 (CBA), 2010 WL 3927042 (E.D.N.Y. Sept. 30, 2010) ("Bongiovanni I"), aff'd sub nom. Bongiovanni ex rel. Bongiovanni v. Grubin, 451 F. App'x 53 (2d Cir. 2011); Bongiovanni v. Grubin, No. 12-CV-6387 (CBA), 2013 WL 5437330 (E.D.N.Y. Sept. 27, 2013) ("Bongiovanni II"), and dismissed the third appeal for lack of jurisdiction, see Bongiovanni v. Grubin, No. 14-CV-1981 (CBA) (E.D.N.Y. 2014) ("Bongiovanni III"). In Bongiovanni I and Bongiovanni II, the Court details the background of the bankruptcy action. Here, the Court only summarizes the facts and procedural background relevant to this appeal.

1

## A. Bankruptcy Proceedings

In September and October 2002, Sudano Inc., Sortino Realty Corp., and Couva Associates Ltd. (collectively, the "Debtors" or the "Debtor corporations") filed voluntary Chapter 11 petitions in the Bankruptcy Court.[1] Sebastian Bongiovanni Sr. ("Bongiovanni Sr."), Bongiovanni Jr.'s late father, signed each Chapter 11 petition and was listed as the sole equity holder for each Debtor corporation. (See, e.g., Bankr. D.E. # 1.) In March 2004, the Bankruptcy Court appointed Janice Grubin as Trustee. (See Bankr. D.E. # 80.) Debtors' primary assets were three residential apartment buildings in Brooklyn, New York. See Bongiovanni I, 2010 WL 3927042, at *1. The Bankruptcy Court authorized the Trustee's sale of these buildings on May 27, 2005. (Bankr. D.E. # 172.) On August 17, 2005, the Bankruptcy Court confirmed the Trustee's plan of liquidation. (Bankr. D.E. # 206, Ex. A (the "Liquidation Plan").) Because liquidation did not yield funds sufficient to satisfy all creditors, the Debtors' shareholder—that is, Bongiovanni Sr.—received no distribution under the liquidation plan. See Bongiovanni I, 2010 WL 3927042, at *1. The Debtor corporations were dissolved and all of their shares were cancelled as of August 30, 2005, the Liquidation Plan's effective date. (See Bankr. D.E. # 206 at 14–15, Ex. A at Arts. 1.47, 5.4.2, 7.11.) Bongiovanni Sr. died in July 2006. See Bongiovanni II, 2013 WL 5437330, at *1. The Trustee filed her final report, with approval of the United States Trustee, on November 27, 2007 (the "Final Report"). (Bankr. D.E. # 317.)

## B. Bongiovanni I

Bongiovanni Jr. filed three pro se objections to the Final Report as well as a motion for damages, purportedly on behalf of his mother ("Mrs. Bongiovanni"). (See D.E. # 320, 321, 336, 337.) Mrs. Bongiovanni argued that she had retained a 50% ownership interest in the Debtor

---

[1] The Court's citations to the bankruptcy docket, "Bankr. D.E.," are to the docket in the consolidated bankruptcy action, In re Sudano, et al., No. 02-BK-21821 (Bankr. E.D.N.Y.).

2

corporations and that her due-process rights were violated when that interest was extinguished by the Liquidation Plan without proper notice. (See, e.g., Bankr. D.E. # 320 at 2.) The objections were resolved through a court-approved settlement agreement with the Trustee and the United States Trustee, under which the Bankruptcy Court approved a supplemented Final Report. (Bankr. D.E. # 340, 341.) The Bankruptcy Court then denied the damages motion, in part because the court determined that Mrs. Bongiovanni had no standing. See In re Sudano, Inc., 391 B.R. 678, 686–90 (Bankr. E.D.N.Y. 2008) (holding that Mrs. Bongiovanni had no standing to bring the motion on her own behalf because any shares she held in the Debtor corporations, either in her name or through intestate or testamentary succession, were extinguished by the Liquidation Plan). Mrs. Bongiovanni appealed, and this Court confirmed that "[h]ad [Mrs. Bongiovanni] simply sought to bring belated attacks on the decisions of the bankruptcy court after her interests were extinguished, [the] conclusion [that she lacked standing] would have been correct." Bongiovanni I, 2010 WL 3927042, at *3. But this Court concluded that Mrs. Bongiovanni nevertheless had standing as the party aggrieved by the purported due-process violation. See id. This Court affirmed the Bankruptcy Court's order on the merits, however, see id. at *3–4, and the Second Circuit affirmed, see Bongiovanni, 451 F. App'x 53.

### C. Bongiovanni II

Bongiovanni Jr., again purporting to act on Mrs. Bongiovanni's behalf, next appealed the Bankruptcy Court's orders denying his motion to renew his objection to the Final Report and to reassign the bankruptcy case to a different judge, (see Bankr. D.E. # 413, 415). See Bongiovanni II, 12-CV-6387 (CBA) (E.D.N.Y. 2013).

In that action, the Trustee moved to enjoin Bongiovanni Jr. from representing Mrs. Bongiovanni. See Bongiovanni II, 12-CV-6387 (CBA) (E.D.N.Y. 2013), D.E. # 14. In its Order

3

granting that motion, this Court stated that "because any shares of the Debtor corporations held by Mrs. Bongiovanni were canceled upon confirmation of the reorganization plan in 2005, the assignment of such non-existent shares to Bongiovanni Jr. cannot confer standing unto him." See Bongiovanni II, 12-CV-6387 (CBA), (E.D.N.Y. 2013), D.E. # 18 at 2–3. This Court therefore held that Bongiovanni Jr. lacked standing to appeal based on Mrs. Bongiovanni's asserted shareholder interest in the Debtor corporations because any such interest had been extinguished by the Liquidation Plan. (See id. at *3 ("Thus, Bongiovanni Jr. lacks standing in this appeal.").)

This Court later addressed Mrs. Bongiovanni's appeal on the merits and affirmed the Bankruptcy Court. See Bongiovanni II, No. 12-CV-6387, 2013 WL 5437330 (E.D.N.Y. Sept. 27, 2013). In the Court's order, it stated that "neither the estate of Bongiovanni Sr. nor any member of the Bongiovanni family retained any ownership interest in the Debtor estates." Id. at *2. Addressing sua sponte the threshold question of whether Mrs. Bongiovanni had standing to appeal, this Court held that "[e]ven assuming that Mrs. Bongiovanni was a shareholder and that her shareholder status would confer standing to appeal a bankruptcy order, any ownership interest that Mrs. Bongiovanni might have had was extinguished as of August 30, 2005, the effective date of the [Liquidation] Plan." Id. at *5. The Court reiterated that, although it had earlier held Mrs. Bongiovanni had standing to bring her due-process claim, "she would not have standing to 'bring belated attacks on the decisions of the bankruptcy court after her interests were extinguished.'" Id. (quoting Bongiovanni I, 2010 WL 3927042, at *3). The Court therefore concluded that "Mrs. Bongiovanni [did] not have standing to appeal Judge Felle[the]r's order denying the motion to renew objections to the Trustee's Final Report, because the Final Report was filed on November 27, 2007, two years after all shares in the Debtor corporations were cancelled." Id. Explicitly, the Court stated that "any claims [Mrs. Bongiovanni] seeks leave to assert against the Trustee for

4

actions taken after all shares in the Debtor corporation were cancelled would fail, as she no longer had any interest in the Debtor properties and the Trustee no longer owed any duty to her." Id. at *8. The Court therefore affirmed the Bankruptcy Court's order. See id. at *9.

### D. Bongiovanni III

Next, purporting to act as the Administrator of Bongiovanni Sr.'s estate, Bongiovanni Jr. moved to compel the Trustee to file a final account and to sanction the Trustee for fraudulent misrepresentations and breach of fiduciary duty. Bongiovanni III, No. 14-CV-1981 (CBA) (E.D.N.Y. 2014), D.E. # 14 at 1. The Bankruptcy Court denied that motion. (See Bankr. D.E. # 445.) Bongiovanni moved for reconsideration, which the Bankruptcy Court denied. (See Bankr. D.E. # 449.) Bongiovanni Jr. appealed. (Bankr. D.E. # 453.) Because Bongiovanni Jr. failed to file his notice of appeal within 14 days of the date of the entry of the Bankruptcy Court's order, however, this Court lacked jurisdiction over the appeal under Federal Rule of Bankruptcy Procedure 8002(a) and dismissed it accordingly. See Bongiovanni III, No. 14-CV-1981 (CBA) (E.D.N.Y. 2014), D.E. # 14 at 1–2.

### E. The Current Appeal

On January 30, 2015, Bongiovanni Jr. moved the Bankruptcy Court to compel the Trustee to file a final account of the administration of the Debtors' estates and for an order directing the Trustee to turn over bank statements. (Bankr. D.E. # 480.) By order dated April 20, 2015, the Bankruptcy Court denied that motion. (Bankr. D.E. # 489.) The Bankruptcy Court held that Bongiovanni Jr. did not have standing to object to the Final Report or to compel the Trustee to turn over records of the Debtors and that, insofar as his motion sought reconsideration of earlier orders, it showed no grounds for reconsideration under Federal Rule of Civil Procedure 60(b). (See id. at 2.) Bongiovanni Jr. timely appealed. (See Bankr. D.E. # 492.)

5

## STANDARD OF REVIEW

Bankruptcy Court orders are appealed to this Court pursuant to 28 U.S.C. § 158(a). On appeal, the Court may "affirm, modify or reverse a bankruptcy judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Factual findings must be upheld unless clearly erroneous. Id. A finding is "clearly erroneous" when, on consideration of the record as a whole, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). However, a bankruptcy court's legal conclusions are reviewed de novo. Solow v. Kalikow, 602 F.3d 82, 91 (2d Cir. 2010).

## DISCUSSION

Appellee argues that Bongiovanni Jr. does not having standing to appeal. (See D.E. # 7 ("Br. for Appellee") at 14–18.) Standing is a "jurisdictional questions of law" that is reviewed de novo. In re Barnet, 737 F.3d 238, 242 (2d Cir. 2013). Upon de novo review, the Court determines that Bongiovanni Jr. does not have standing and dismisses this appeal.

"The current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution." In re DBSD N. Am., Inc., 634 F.3d 79, 88 (2d Cir. 2011). In the Second Circuit, however, "in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." In re Barnet, 737 F.3d at 242. An appellant therefore must show "not only injury in fact under Article III but also that the injury is direct and financial." In re DBSD N. Am., Inc., 634 F.3d at 89 (internal quotation marks and alterations omitted). "This test is stricter than Article III's 'injury in fact' test, and its stringency

6

is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." In re Barnet, 737 F.3d at 242 (internal quotation marks, citations, and alterations omitted).

Bongiovanni Jr. did not suffer a direct, financial injury from the Bankrupty Court's April 20, 2015, order. Any financial interest Bongiovanni Jr. had on behalf of Bongiovanni Sr.'s estate was extinguished when the Liquidation Plan went into effect on August 30, 2005. (See Bankr. D.E. # 206 at 14–15, Ex. A at Arts. 1.47, 5.4.2, 7.11.) This result should hardly come as a surprise to Bongiovanni Jr. in light of the previous decisions in this case. See In re Sudano, Inc., 391 B.R. at 686–90 (holding that Mrs. Bongiovanni had no standing to seek damages because any shares she might have held in the Debtor corporations were extinguished by the Liquidation Plan); Bongiovanni I, 2010 WL 3927042, at *3 ("Had [Mrs. Bongiovanni] simply sought to bring belated attacks on the decisions of the bankruptcy court after her interests were extinguished, [the] conclusion [that she lacked standing] would have been correct."); Bongiovanni II, 12-CV-6387 (CBA) (E.D.N.Y. 2013), D.E. # 18 at 2–3 ("[B]ecause any shares of the Debtor corporations held by Mrs. Bongiovanni were canceled upon confirmation of the reorganization plan in 2005, the assignment of such non-existent shares to Bongiovanni Jr. cannot confer standing unto him."); Bongiovanni II, 2013 WL 5437330, at *2 ("[N]either the estate of Bongiovanni Sr. nor any member of the Bongiovanni family retained any ownership interest in the Debtor estates."); id. at *5 ("Even assuming that Mrs. Bongiovanni was a shareholder and that her shareholder status would confer standing to appeal a bankruptcy order, any ownership interest that Mrs. Bongiovanni might have had was extinguished as of August 30, 2005, the effective date of the Plan."); id. at *8 ("[A]ny claims [Mrs. Bongiovanni] seeks leave to assert against the Trustee for actions taken after

all shares in the Debtor corporation were cancelled would fail, as she no longer had any interest in the Debtor properties and the Trustee no longer owed any duty to her."). To reiterate, any interest that Bongiovanni Jr. had in the Debtor corporations, including any interest on behalf of himself, Mrs. Bongiovanni, or Bongiovanni Sr.'s estate, was extinguished as of August 30, 2005, when the Liquidation Plan went into effect, the Debtor corporations were dissolved, and all shares of the Debtor corporations were cancelled. Accordingly Bongiovanni Jr., as administrator of Bongiovanni Sr.'s estate or otherwise, has not suffered a direct, financial injury from the Bankruptcy Court's order and lacks standing to appeal it.

Having determined that Bongiovanni Jr. lacks standing, the Court does not reach the merits of his appeal. Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." In re Bernard L. Madoff Inv. Sec. LLC., 721 F.3d 54, 66 (2d Cir. 2013) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). If the plaintiff lacks standing, "a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's . . . claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). "To dismiss a claim on the merits, or to affirm such dismissal, a court must have jurisdiction." Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 566 (2d Cir. 2016). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal quotation marks omitted); Siegel v. Apergis, 610 F. App'x 15, 16 (2d Cir. 2015).

Since Bongiovanni Jr. lacks standing to appeal, this Court lacks jurisdiction over this action. The appeal is accordingly dismissed.

## CONCLUSION

For these reasons, the Court dismisses the appeal of the Bankruptcy Court order. The Clerk of Court is directed to terminate all pending motions and close the case.

SO ORDERED.

Dated: July 27, 2016
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge